UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **Ami Dunn,** *Plaintiff,* v. **GMA Investments, LLC, d/b/a Summit Receivables, Anthony Guadagna, and Kristy Macswan,** *Defendants*. | Case Number: _____ Division: _____ Ad Damnum: $5,000 + Atty Fees & Costs **JURY TRIAL DEMANDED** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, **Ami Dunn**, ("**Ms. Dunn**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, **GMA Investments, LLC,** doing business as **Summit Receivables**, ("**Summit**"), **Anthony Guadagna ("Guadagna")**, **Kristy Macswan** ("**Macswan**") (collectively, "**Defendants**") stating as follows:

**PRELIMINARY STATEMENT**

1. This is an action brought by Ms. Dunn against the Defendants for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq.* ("**FDCPA**"), the Florida Consumer Collection Practices Act, Section 559.55, Florida Statutes *et. seq.* ("**FCCPA**") and the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et. seq.* ("**TCPA**").

## JURISDICTION AND VENUE

2.     Jurisdiction arises under the FDCPA, 15 U.S.C. § 1692k(d), the TCPA, 47 U.S.C. § 227(b)(3) and the FCCPA, Section 559.77 (1), Florida Statutes.

3.     The Defendants are subject to the provisions of the FDCPA, TCPA and the FCCPA, and are subject to the jurisdiction of this Court pursuant to 28 U.S.C. § 1331.

4.     Supplemental jurisdiction arises for the state law claims under 28 U.S.C. §1367.

5.     Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. §1391(b)(2), because the events giving rise to this cause of action occurred in this District.

## PARTIES

6.     **Ms. Dunn** is a natural person residing in Tampa, Hillsborough County, Florida and is a "consumer" as defined by the FDCPA and the FCCPA, 15 U.S.C. § 1692a(3) and Section 559.55(8), Florida Statutes, respectively.

7.     **Summit** is a Nevada limited liability company with a primary business address of 1291 Galleria Drive, Suite 170, Henderson, NV 89014.

8.     Summit is registered to conduct business in the state of Florida, where its Registered Agent is **Corporation Service Company, 1201 Hays St., Tallahassee, FL 32301.**

9.     At the time of the events complained of herein, Summit was registered with the Florida Office of Financial Regulation as a Consumer Collection Agency

("**CCA**") and held Florida Consumer Collection Agency license number **CCA9903954**. **SEE PLAINTIFF'S EXHIBIT A**.

10. **Guadagna** is a natural person, who on information and belief resides at **1502 Arroyo Verde Drive, Henderson, NV 89012.**

11. At all times relevant, Guadagna was the manager and CEO of Summit, and was the person responsible for the decision to collect debts.

12. **Macswan** is a natural person and a compliance officer for Summit.

13. Macswan's LinkedIn profile states that she has over 7 years' experience in collections, many in supervisory positions, and specifically states one of her duties at Summit is to "follow FDCPA guidelines."

14. Thus, by her own admission, Macswan is familiar with federal consumer protection statutes.

15. On information and belief, Macswan resides, and can be served at, 746 Wolf Point St., Henderson, NV 89002.

16. Alternatively, Macswan can be served at the office of her employer, 1291 Galleria Drive, Suite 170, Henderson, NV 89014.

17. The Defendants are "debt collectors" within the meaning of the FDCPA, 15 U.S.C. §1692a(6) and the FCCPA, Section 559.55(7), Florida Statutes, in that they use an instrumentality of commerce, including postal mail, interstate and within the state of Florida, for their businesses, the principal purposes of which are the collection of debts. Alternatively, defendants regularly collect or attempt to collect, directly or indirectly, debts owed or asserted to be owed another.

## FACTUAL ALLEGATIONS

### The Debt

18. At some point in the past, Ms. Dunn allegedly obtained a payday loan (the "**Debt**") from an internet-based payday loan company called Mobiloans, LLC ("**Mobiloans**").

19. The loan from which the Debt arose was a "payday" loan – a short-term, high-interest rate, unsecured loan.

20. The Debt arose from a loan primarily for family, personal, and household purposes, specifically a payday loan for personal purposes, and meets the definitions of "debt" under the FDCPA, 15 U.S.C. § 1692a(5), and the FCCPA, Section 559.55(6), Florida Statutes.

21. Ms. Dunn disputes owing the Debt.

### Mobiloans

22. Mobiloans is an online "payday lender" operating from the website www.Mobiloans.com.

23. Mobiloans' website states that Mobiloans makes loans at interest rates between 206% annually and 442% annually. **SEE PLAINTIFF'S EXHIBIT B**.

24. These figures assume that payments are made on-time. Often, the effective APR charged is much higher than 442%, due to the addition of late fees or rollover fees.

25. On information and belief, the loan from which the Debt arose charged fees in excess of 206% annually.

26. Pursuant to Section 687.02(1), Florida Statutes, all contracts for the payment of interest upon any loan, advance of money, line of credit, or forbearance to enforce the collection of any debt, or upon any obligation whatsoever, at a higher rate of interest than the equivalent of 18 percent per annum simple interest is usurious and in violation of the law.

27. Pursuant to Section 687.071(2), Florida Statutes, unless otherwise specifically allowed, any person making an extension of credit to any person, who willfully and knowingly charges, takes, or receives interest thereon at a rate exceeding 25 percent per annum but not in excess of 45 percent per annum, or the equivalent rate for a longer or shorter period of time commits a misdemeanor of the second degree.

28. Pursuant to Section 687.071(7), Florida Statutes, no loan made in violation of this statute shall be an enforceable debt in the State of Florida.

29. Thus, the loan from which the Debt arose is unenforceable under Florida Statute, since fees originally assessed are far in excess of the maximum statutory rate.

30. Mobiloans was never licensed by the Florida Office of Financial Regulation to act as a deferred presentment provider.

31. Mobiloans is not a federally-chartered bank.

**Transfer of the Debt to Summit**

32. At some point, the Debt was sold to Summit, or an unknown successor-in-interest, who then placed the Debt for collection with Summit.

33. The alleged balance of the loan was $1,198.76.

34. Summit has a long history of non-compliance with state and federal consumer protection statutes.

35. For example, in June 2018, Summit, as well as Guadagna and Macswan, were sent a notice of intent to impose civil penalty and to impose a cease and desist order by Jorge Perez, Banking Commissioner for the State of Connecticut, for unlawfully collecting debt in Connecticut. See *IN THE MATTER OF: GMA INVESTMENTS, LLC d/b/a SUMMIT RECEIVABLES NMLS # 1217898.*

36. Additionally, multiple consumers throughout the country have sued the Defendants for virtually identical violations of the FDCPA; *see, e.g., Cue vs. GMA Investments LLC and Anthony Guadagna*, case no. 1:18-cv-01323-DAP (E.D. Ohio 2018) (threatening criminal charges and civil legal action on a Great Plains payday loan for money lent in excess of 400% APR).

## Summit's Collection Efforts

37. In 2018, Summit called Ms. Dunn's cell phone on numerous occasions, attempting to collect the alleged Debt.

38. Summit would often leave voicemail messages for Ms. Dunn.

39. These messages varied in content, but all attempted to create a false sense of urgency, suggesting that failure to return the call immediately would result in some nebulous adverse action occurring.

## November 20, 2108 Voicemail

40. On November 20, 2018, Summit called and left the following message:

> This call is for Ami Dunn. If this is not Ami Dunn, please hang up. My name is Melvin, and I'm with Summit Receivables. I'm calling you regarding your Mobiloan LLC account and an outstanding balance of $1,198.76. It's very important that you contact my office *immediately* so that we can get this matter resolved *voluntarily*. My number is 844-498-6545 and my extension is 9031. This communication is from a debt collector and an attempt to collect a debt.

41. An unsophisticated consumer would believe that a debt collector who demands an immediate reply, so that a debt can be resolved "voluntarily," plans to resolve the resolve the account involuntarily – i.e. through legal action against her to collect the debt.

### November 30, 2018 Voicemail

42. Ms. Dunn also received a voicemail on November 30, 2018.

43. The November 30 call was made by an Automated Telephone Dialing System ("ATDS") and utilized pre-recorded content.

44. The November 30 call began in the voice of a male caller with a heavy accent, stating "Yes this message is for Ami Dunn."

45. There were then four seconds of silence, followed by a computerized "beep." After the beep, a different male caller, speaking without an accent, stated:

> My name is Melvin and I'm calling you from Summit Receivables. I'm calling again about a matter which may concern you. We left several documented, time-stamped messages involving a personal business matter in our office. *You have failed to respond and leave us no other option but to move forward with different avenues to resolve this issue*. Please contact me at 1-844-498-6545. This communication is from a debt collector, this is an attempt to collect a debt.

46. The TCPA prohibits the use of automated dialing mechanisms and prerecorded content in non-emergency calls to a cellphone. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

47. Thus, the November 30 voicemail, due to the use of pre-recorded content via an ATDS, violated the TCPA.

48. In addition to violating the TCPA, the communication falsely implies that legal action will occur if the Debt is not paid.

**December 18, 2018 Telephone Call**

49. On December 18, 2018, Ms. Dunn called Summit and spoke with a collection agent identifying himself as "Mr. Whitehead" ("Whitehead").

50. Whitehead expressed to Ms. Dunn that she needed to pay the Mobiloan debt *immediately*, since he had been instructed to "send out a verification of employment" to Ms. Dunn's employer, as she had been "reported for possible account deposit fraud."

51. Whitehead asked Ms. Dunn several times if she would like to resolve the matter "voluntarily," and added in one instance that "voluntary" payment would stop Summit from "sending out documents to your employer."

52. Whitehead expressly threatened to communicate with Ms. Dunn's employer despite knowing that the Debt had not been reduced to judgment.

53. Communicating with a person's employer regarding a debt that has not been reduced to judgment violates the FDCPA, 15 U.S.C. § 1692c(b).

54. Whitehead also stated that not paying the loans was "the same thing as passing a bad check in your state."

55. Pursuant to Section 832.05(2)(a), Florida Statutes, writing a worthless check for an amount over $300 is a felony.

56. Thus, Whitehead was accusing Ms. Dunn of having committed a crime by not paying back a disputed loan with illegal interest rates which render the entire loan unenforceable.

57. Ms. Dunn stated to Whitehead that she refused to pay the Debt.

58. Whitehead seemed surprised Ms. Dunn would not pay, and said "well, good luck then" and hung up the call.

**December 19, 2018 Voicemail**

59. On December 19, 2018, Summit called Ms. Dunn via an ATDS and left a message on her cell phone's voicemail. The call consisted of pre-recorded content and a female speaker's voice, which stated:

> It looks like you had a conversation with a representative here in another department and some of the notes kind of put you in a negative light. I really wanted to speak to you to give you an opportunity to respond on your behalf and let me know if there was anything I can take into consideration before I do turn in my recommendation. I don't have a lot of time to try to make contact with you so I'd really appreciate a call back as soon as you get this message. Let me give you my number 1-844-498-6545. If you would call me back as soon as you get this message as this is an attempt to collect a debt and any information obtained will be used for that purpose. I'm really looking forward to you call back today. Thanks so much.

60. In addition to violating the TCPA, the communication falsely implies that legal action will occur if the Debt is not paid, as the unidentified pre-recorded "representative" claims that she will be turning in a "recommendation" and wants to provide Ms. Dunn with an opportunity to "respond" on her own behalf.

61. Likewise, the voicemail would be misleading to an unsophisticated consumer, as it implies that the Debt is valid and enforceable against Ms. Dunn, when, to the contrary, the Debt arose from a usurious and unenforceable payday loan.

## Failure to Comply with 15 U.S.C. § 1692g

62. At no point did the Defendants mail any written communication to Ms. Dunn containing:

   a. a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

   b. a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; or,

   c. a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

## Failure to Comply with Section 559.715, Florida Statutes

63. Section 559.715, Florida Statutes requires that the assignee of a consumer debt give the debtor written notice of the assignment 30 days prior any action taken to collect the debt.

64. No notice in compliance with this statute was sent to Ms. Dunn by any entity.

## Joint and Several Liability

65. The corporate veil does not insulate officers and directors from personal liability under the FDCPA if they are involved in the collection of a debt and/or involved in creating policies and procedures which knowingly violate the FDPCA.

66. Both Macswan and Guadagna are personally involved in setting collection policies and procedures for Summit.

67. Macswan, as the compliance officer for Summit, and Guadagna, as CEO, authorized and encouraged their agents to threaten legal action and "non-voluntary" resolution if immediate payments were not made.

68. Thus, Macswan and Guadagna are jointly and severally liable, along with Summit, for their agents' behavior, which was under their control and authority, as well as their own actions. *See, e.g., Schwarm v. Craighead*, 552 F. Supp.2d 1056 (E.D. Cal 2008); *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433 (6th Cir. 2008).

## Phone Calls and Voicemails are Communications

69. The Defendants' phone calls and voicemails left for Ms. Dunn were "communications" as defined by 15 U.S.C. § 1692a(2) and Section 559.55(2), Florida Statutes.

70. Ms. Dunn never consented to receiving calls on her cell phone via ATDS or calls with pre-recorded content from Mobiloans.

71. The calls placed by the Defendants were not placed for emergency purposes.

72. Ms. Dunn has hired the aforementioned law firm to represent her in this matter and is obligated to pay its reasonable fees.

## COUNT I
## DEFENDANTS' VIOLATIONS OF THE FDCPA

73. Ms. Dunn adopts and incorporates paragraphs 1 – 72 as if fully restated herein.

74. The Defendants violated **15 U.S.C. § 1692e(2)(a)** when Summit, acting by and through its agents and/or employees, repeatedly made false representations regarding the character or legal status of the debt when it falsely represented that the Debt was valid and legally enforceable against Ms. Dunn, when the Debt was void as usurious under Florida law.

75. The Defendants violated **15 U.S.C. § 1692e and 1692e(10)** when Summit, acting by and through its agents and/or employees, used false, deceptive, and misleading representations in connection with the collection of a debt by:

   a. falsely representing that the Debt was legally enforceable when it was usurious and not enforceable;

   b. repeatedly claiming legal action would be taken against Ms. Dunn for nonpayment, even though such action was not intended and could not legally be taken, as the Debt was unenforceable; and by

   c. claiming that the nonpayment of a loan bearing more than 400% annual interest could result in criminal prosecution;

76. The Defendants violated **15 U.S.C. § 1692e(3)** when Summit, acting by and through its agents and/or employees, implied that they were, or were affiliated with, a law firm or attorneys-at-law, by repeatedly implying they could, and would, take legal action for non-payment of the Debt.

77. The Defendants violated **15 U.S.C. § 1692e(5)** when Summit, acting by and through its agents and/or employees, threatened action which could not legally be taken, specifically, legal and/or criminal enforcement of the Debt, despite the Debt being unenforceable due to usurious interest rates imposed by the original lender, and communication with Ms. Dunn's employer, despite such communication being prohibited by the FDCPA.

78. The Defendants violated **15 U.S.C. § 1692e(7)** when Summit, acting by and through its agents and/or employees, falsely claimed that Ms. Dunn had committed a crime by not repaying the Mobiloans loan, claiming that failure to pay was "the same as" writing a bad check under Florida law, when this is false.

79. The Defendants violated **15 U.S.C. § 1692f** when Summit, acting by and through its agents and/or employees, used unfair and unconscionable means to collect a debt. Specifically, the Defendants:

   a. attempted to collect a debt they knew was unenforceable due to: (i) the interest rate and fees; and, (ii) Mobiloans was not licensed to lend in Florida;

   b. failed to disclose, in their communications with Ms. Dunn, that the Debt was unenforceable;

  c. called Ms. Dunn on her cell phone via ATDS and/or utilized pre-recorded calls, when such calls are illegal without express consent, and the Defendants were aware no consent existed; and

  d. engaged in a systemic, on-going scheme to defraud Ms. Dunn by claiming that a disputed, unenforceable debt was enforceable under Florida law and that civil and criminal action would be swiftly undertaken if the Debt was not paid immediately; and,

  e. threatened to communicate information about the Debt to Ms. Dunn's employer, when any such communication would violate 15 USC § 1692c(b).

80. The Defendants violated **15 U.S.C. § 1692g(a)** when they failed to mail written notice to Ms. Dunn within five days of initial communication, stating:

  a. that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

  b. that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and,

    c.    that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

81.    The Defendants' actions were willful, intentional, and representative of their regular business practices.

82.    Macswan, Guadagna, and Summit are jointly and severally liable for the above-stated violations of the FDCPA, arising from their agents' behavior, which was under their control and authority, as well as their own actions.

**WHEREFORE**, Ms. Dunn respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally for:

    a.    Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    b.    Unspecified actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

    d.    Such other relief that this Court deems just and proper.

## COUNT II
## DEFENDANTS' VIOLATIONS OF THE FCCPA

83.    Ms. Dunn adopts and incorporates paragraphs 1 – 72 as if fully restated herein.

84.    The Defendants violated Section **559.72(4)**, Florida Statutes, when Summit, acting by and through its agents and/or employees, willfully threatened to disclose

the Debt to Ms. Dunn's employer prior to obtaining final judgment, without the consent of Ms. Dunn, in an effort to compel her to pay a disputed debt.

85. The Defendants violated Section **559.72(9)**, Florida Statutes, when Summit, acting by and through its agents and/or employees, attempted to enforce a debt against Ms. Dunn that they knew was illegitimate and unenforceable due to (1) the application of an illegally high interest rate on the principal amount of the Debt, and (2) the fact that Mobiloans was never licensed as a deferred presentment provider in the State of Florida.

86. The Defendants violated Section **559.72(9)**, Florida Statutes, when they asserted a right which they knew does not exist, to wit, the right to collect a $1,198 debt when no such rights exist since the loan was usurious and, as such, unenforceable.

87. The Defendants violated Section **559.72(9)**, Florida Statutes, when they asserted a right which they knew does not exist, to wit, the right to take legal action on a debt rendered null and void under Florida statute.

88. The Defendants violated Section **559.72(9)**, Florida Statutes, when they attempted to collect a consumer debt that had been assigned to them, without first sending a notice of assignment pursuant to Section 559.715, Florida Statues, a prerequisite to any collection action by an assignee.

89. The Defendants violated Section **559.72(9)**, Florida Statutes, when they orally communicated in such a manner as to imply they were, or were affiliated with, a law office or attorneys-at-law.

90. The Defendants actions were willful, calculated and intentional.

91. The Defendants, working in conjunction to engage in the foregoing behavior, are jointly and severally liable for the actions taken against Ms. Dunn.

**WHEREFORE,** Ms. Dunn respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, and otherwise solely, for:

a. Statutory damages of **$1,000.00** pursuant to Section 559.77(2), Florida Statutes;

b. Unspecified actual damages pursuant to Section 559.77(2), Florida Statutes;

c. Injunctive relief preventing the Defendants from attempting to collect the alleged debt from Ms. Dunn pursuant to Section 559.77(2), Florida Statutes;

d. Punitive damages for the Defendants intentional and flagrant violation of the FCCPA, pursuant to Section 559.77(2), Florida Statutes;

e. Reasonable costs and attorney's fees pursuant to pursuant to Section 559.77(2), Florida Statutes; and,

f. Such other relief that this Court deems just and proper.

## COUNT III
## VIOLATIONS OF THE TCPA

92. Ms. Dunn adopts and incorporates the above-numbered paragraphs 1-72 as if fully stated herein.

93. Summit willfully violated 47 U.S.C. § 227(b)(1)(A)(iii) when it, by ant through its agents and/or employees, made at least 2 non-emergency calls to Ms. Dunn's

cellular telephone number using an automated dialing mechanism or which utilized prerecorded content without her consent.

94.   Summit knew that its calls were not permissible and that it lacked the requisite express consent.

95.   Summit is liable to Ms. Dunn for willfully and knowingly failing to comply with the TCPA.

96.   Ms. Dunn is entitled to injunctive relief from potential future violations of the TCPA.

**WHEREFORE,** Ms. Dunn respectfully requests this Honorable Court enter judgment against Summit for:

a.   Statutory damages of **$1,500** for each willful violation of the TCPA found to have been committed, pursuant to 47 U.S.C. § 227(b)(3)(B) **($3,000 based solely on calls known to Ms. Dunn)**, or $500 for each negligent (for a total of $1,000) violation of the TCPA found to have been committed, pursuant to 47 U.S.C. § 227(b)(3)(B);

b.   Equitable relief enjoining Summit from further violations of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(A); and

c.   Such other relief that this Court deems just and proper.

## **JURY TRIAL DEMANDED**

Ms. Dunn demands a jury trial on all issues so triable.

Respectfully submitted this 26th day of December 2018, by:

*/s/ Bryan J. Geiger*
Thomas M. Bonan
Florida Bar Number: 119168
Seraph Legal, P. A.
2002 E. 5th Ave., Suite 104
Tampa, FL 33605
(813) 567-1230
BGeiger@seraphlegal.com
Counsel for Plaintiff

**EXHIBITS:**
A       Summit's Florida Consumer Collection Agency License Record
B       Screenshot of Mobiloan's Website, December 18, 2018